USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------  X
:
TRUSTEES OF THE NEW YORK CITY :
DISTRICT COUNCIL OF CARPENTERS :
PENSION FUND, WELFARE FUND, :
ANNUITY FUND, AND APPRENTICESHIP, :
JOURNEYMAN RETRAINING, :
EDUCATIONAL AND INDUSTRY FUND, :
TRUSTEES OF THE NEW YORK CITY :
CARPENTERS RELIEF AND CHARITY :
FUND, CARPENTER CONTRACTOR :
ALLIANCE OF METROPOLITAN NEW :
YORK, and NEW YORK CITY DISTRICT :
COUNCIL OF CARPENTERS, :
:
                              Petitioners, :
:
                -against- :
:
ARCHITECTURAL METAL CONCEPT LLC, :
:
                              Respondent. :
-----------------------------------------------------------------  X

1:22-cv-5729-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, the Trustees of the New York City Carpenters Relief and Charity Fund, the Carpenter Contractor Alliance of Metropolitan New York (the "Funds"); and the New York City District Council of Carpenters (the "Union," and together with the Funds, the "Petitioners") seek to confirm an arbitration award against Architectural Metal Concept LLC ("Architectural Metal Concept" or "Respondent") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. For the following reasons, the award is confirmed.

I. **BACKGROUND**

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, and Apprenticeship, Journeyman Retraining and Educational and Industry Fund "are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ('ERISA')." Dkt. No. 11 ("Davidian Decl.") ¶ 4. They are based in New York City. *Id.* The Trustees of the New York City Carpenters Relief and Charity Fund operate "a charitable organization established under section 501(c)(3) of the Internal Revenue Code." *Id.* ¶ 5. The fund is based in New York City. *Id.* The Carpenter Contractor Alliance of Metropolitan New York "is a labor management not-for-profit corporation . . . operating pursuant to Section 302(c)(9) of the LMRA." *Id.* ¶ 6. The Union "is a labor organization . . . and is the certified bargaining representative for certain employees of Architectural Metal Concept." *Id.* ¶ 7.

Architectural Metal Concept is construction firm that has contracted with the New York State Insurance Fund ("NYSIF") for certain public projects. Dkt. No. 1 ("Pet.") ¶ 9. On April 16, 2018, Respondent signed a Letter of Assent binding itself to the relevant NYSIF project labor agreement (the "PLA"). Pet. Ex. A (Letter of Assent); Pet. Ex. B (PLA). Under the PLA, Respondent must "pay on a timely basis contributions on behalf of all employees covered by this Agreement to those established jointly trusted employee benefit funds designated in Schedule 'A'" of the PLA. PLA Art. 11 § 2(A). The PLA also binds Respondent to the applicable collective bargaining agreement with the Union—here, the Independent Building Construction Agreement— to the extent that such terms do not conflict with other provisions of the PLA. PLA Art. 2 § 4; *see* PLA Sched. A; Pet. Ex. C (collective bargaining agreement, or "CBA").

The CBA and the PLA each require that Architectural Metal Concept remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of

the Union. Davidian Decl. ¶ 15; PLA Art. 11 § 2(A)–(B); CBA Art. XV § 1. In order to verify that employers like Architectural Metal Concept make their agreed upon contributions, the CBA requires each employer to furnish its books and payroll records when requested by the Funds for reviews and audits. CBA Art. XV § 1.

The CBA and PLA bind employers to the policies, rules, and regulations adopted by the Funds. PLA Art. 11 § 2(B); CBA Art. XV § 3. Among the Funds' policies is a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). Davidian Decl. ¶ 18; Pet. Ex. H (Collection Policy).

The CBA provides that if a "dispute or disagreement arise[s] between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before [an] impartial arbitrator."[1] CBA Art. XV § 7. The CBA and Collection Policy also provide that in the event that the Funds are "required to arbitrate a dispute or file a lawsuit over unpaid contributions," the Funds are entitled to collect more than the late contributions alone. Davidian Decl. ¶ 20. According to the Collection Policy, in addition to interest on the delinquent amount, the Funds are entitled to a "delinquency assessment." Collection Policy § V ¶ 4. "The amount of the delinquency assessment shall be the greater of (a) interest on the delinquent contributions . . . or (b) liquidated damages in the amount of twenty percent (20%) of the principal amount of all delinquent contributions." *Id.* The "[i]nterest owed by a delinquent employer" is "calculated at the prime lending rate of Citibank plus 200 basis points, compounded daily, on a declining principal basis." *Id.* ¶ 1. In addition, the Collection Policy mandates that delinquent employers are liable for all attorneys' fees incurred by the Funds when

---

[1] While the CBA lists Roger Maher as the designated arbitrator, the PLA lists J.J. Pierson or Richard Adelman as designated arbitrators. *Compare* CBA Art. XV § 7, *with* PLA Art. IX § 1. Where those documents conflict, the PLA governs. *See* PLA Art. 2 § 4; Davidian Decl. ¶ 12. Therefore, Petitioners' use of J.J. Pierson as the arbitrator, *see* Davidian Decl. ¶ 25, complied with the terms of the agreements governing the arbitration.

trying to collect delinquent contributions. *Id.* ¶ 6. The Collection Policy also states that delinquent employers are liable for "[a]ll recoverable costs actually incurred in court or other legal actions for the collection of delinquent contributions." *Id.* ¶ 7.

After Petitioners initiated arbitration, J.J. Pierson (the "Arbitrator") mailed Architectural Metal Concept notice of the arbitration hearing in a letter dated December 28, 2021. Pet. Ex. I. The Arbitrator conducted the hearing on January 19, 2022, at which Architectural Metal Concept did not make an appearance. Pet. Ex. J at 1–2. In a January 26, 2022 decision, the Arbitrator determined that Architectural Metal Concepts had violated the CBA by failing to remit accurate and timely contributions for the pay periods of April 16, 2018 through June 2, 2018, and awarded the Funds $12,841.88. *Id.* at 2–3. In addition to the principal amount of $6,074.45, the Arbitrator awarded $1,405.14 in interest, $1,214.89 in liquidated damages, $12.40 in promotional fund contributions, $400 in court costs, $1,500 in attorneys' fees, a $1,000 arbitrator's fee, and $1,234 in audit costs. *Id.* at 3; Davidian Decl. ¶ 27.

In March 2022, Architectural Metal Concept made a payment of $3,754.15 towards the award. Davidian Decl. ¶ 29.[2] On April 5, 2022 and June 6, 2022, the company acknowledged its outstanding balance, but has refused to pay it; $9,087.71 remains due on the award. *Id.* ¶ 30.

Petitioners ask the Court to confirm the award, updated in light of additional court costs and attorneys' fees. Dkt. No. 12, Ex. M ("Proposed J."). Petitioners propose that the award should reflect (a) $9,087.71 representing the outstanding balance of the original award after giving effect to Respondent's partial payment; (b) $92.23 in costs from the proceedings; (c) $3,118 in attorneys' fees; and (d) post-judgment interest at the statutory rate for civil awards under 28 U.S.C. § 1961. *Id.*

---

[2] Petitioners do not specify the precise date on which this payment was made. Davidian Decl. ¶ 29. The Court infers that it was made sometime around March 22–28, 2022, based on entries from Petitioners' lawyers for a "[t]elephone conference . . . re . . . partial payment," an "email fr[om] Fund Office re partial payment," and "[c]alculat[ing] amounts owed on basis of award obtained, partial payments applied." Pet. Ex. L at 2.

The requested attorneys' fees are based on 14.1 hours of work. Dkt. No. 12 ("Virginia Decl.") ¶ 12. Petitioner's counsel billed at the rates of $350 per hour for work performed by a partner, $275 per hour for work performed by an associate, and $120 per hour for work performed by a legal assistant. *Id.* ¶¶ 8–10; *see also* Dkt. No. 12, Ex. L ("History Bill for the Ct."). The "rates are the result of negotiations between [counsel] and the [Petitioners]." Virginia Decl. ¶ 11. Petitioner's counsel consisted of Charles Virginia, a founding partner at Virginia & Ambinder LLP ("V&A"), Maura Moosnick, an associate at V&A, and two legal assistants. *Id.* ¶¶ 8–10.

Petitioners filed a petition to confirm the arbitration award on July 6, 2022. *See* Pet. Petitioners moved for summary judgment on July 20, 2022. Dkt. No. 10. Architectural Metal Concept has not entered an appearance or made any filings with the Court, despite being properly served with the complaint, motion, and all relevant filings. *See* Dkt. Nos. 8–9.

## II. LEGAL STANDARD

"Section 301 of the [LMRA], 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421, 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining

agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[ ] is necessary to confirm the award" (internal quotation marks omitted)).

Furthermore, "an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *Gottdiener*, 462 F.3d at 109. Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

### III. DISCUSSION

#### A. Confirmation of the Arbitration Award

Here there is no indication that the Arbitrator's award was procured through fraud or dishonesty or that the Arbitrator was acting in disregard of the CBA or outside the scope of his broad authority as arbitrator. Rather, the record indicates that the Arbitrator based his award on undisputed evidence that the Funds conducted an audit in accordance with the terms of the CBA and determined that Architectural Metal Concept had been delinquent in its contributions to the funds between April 16, 2018 and June 2, 2018. Pet. Ex. J at 2. The record further indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on undisputed testimony. *Id.* at 3. And Respondent accepted the Arbitrator's decision and made a partial payment towards the award. Davidian Decl. ¶ 29. Accordingly, Petitioners' motion is granted and the award is confirmed.

#### B. Post-Judgment Interest

Petitioners further request post-judgment interest accruing from the date of judgment until Architectural Metal Concept pays in full. Proposed J. at 1. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013), and this mandate applies when confirming arbitration awards. *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

#### C. Attorneys' Fees and Costs of Bringing this Petition

Petitioners also seek to recover reasonable attorneys' fees and costs incurred by bringing this petition. Proposed J. at 1. "[I]n a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local*

*No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985).  Section 301 of the LMRA does not provide for recovery of attorneys' fees.  *See id.*  "Nevertheless, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification."  *Abondolo v. H. & M.S. Meat Corp.*, No. 07-cv-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (internal quotation marks omitted) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03-cv-5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

"A party's failure to comply immediately with an arbitration award does not necessarily warrant an award of attorney's fees."  *Id.*  But courts have found such an award permissible where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification."  *First Nat'l Supermarkets, Inc., v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 118 F.3d 893, 898 (2d Cir. 1997); *see also Ceona PTE Ltd. v. BMT Giant, S.A. De C.V.*, No. 16-cv-4437, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (awarding attorneys' fees and costs to petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the Final Award, and has not responded to [the petitioner's] petition in this action"); *Herrenknecht Corp. v. Best Road Boring*, No. 06-cv-5106, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding attorneys' fees and costs to petitioner in unopposed petition to confirm an arbitration award where respondent "offered no justification for refusing to comply with the decision of the arbitrator").

Here, an award of attorneys' fees and costs is warranted.  By entering into the CBA, Architectural Metal Concept agreed to submit all disputes to binding arbitration.  Further, both the CBA and the Funds' Collection Policy explicitly entitle Petitioners to recover reasonable attorneys' fees and costs incurred while collecting delinquencies.  *See* CBA Art. XV § 6; Collection Policy § V.  Respondent has neither fully complied with the award nor provided any justification for its failure to

8

do so.  For these reasons, the Court finds that it is just and reasonable to award Petitioners reasonable attorneys' fees and costs pursuant to bringing this action.

To calculate reasonable attorneys' fees, "district courts use the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006).  "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  "[I]t is within the Court's discretion to reduce the requested rate" when the Court finds the rate unreasonable in the relevant market.  *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, No. 05-cv-5546, 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008) (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)), *report and recommendation adopted*, No. 05-cv-5546, 2008 WL 2940517 (S.D.N.Y. July 29, 2008).  To assist the Court in determining the appropriate award, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).  "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded" from the calculation of a reasonable fee.  *Id.* (quoting *Hensley*, 461 U.S. at 434).

Petitioners' request is reasonable.  Petitioners request $3,118 in attorneys' fees and $92.23 in costs incurred by bringing this petition.  *See* Proposed J. at 1; Virginia Decl. ¶ 12.  Petitioners submitted invoices documenting the specific tasks performed, the number of total hours worked (14.1), and hourly rates for the attorney and the two legal assistants who worked on the case.  *See* History Bill for the Ct.  These are satisfactory records of the attorneys' efforts and sufficiently set forth the specific fees and costs incurred while seeking confirmation of the award.  *See id.*

Furthermore, these fees and costs "are the result of negotiations between [Petitioners' attorneys] and the [Petitioners] regarding the proper hourly rates" for these legal services. Virginia Decl. ¶ 11. The Court also concludes that 14.1 hours is a reasonable number of hours worked given the description of the tasks performed. *See Flores v. J&B Club House Tavern, Inc.*, No. 10-cv-4332, 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (noting that, in determining whether listed hours are reasonable, "[t]he critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures") (internal quotation marks and citation omitted); History Bill for the Ct. (detailing the precise tasks that were undertaken during the 14.1 hours of work related to bringing this petition).

The fees are based on the following rates: $350 per hour for Mr. Virginia, a founding partner at V&A who graduated from law school in 1989; $275 per hour for Ms. Moosnick, an associate who graduated from law school in 2021; and $120 per hour for the legal assistants. *See id.* ¶¶ 8–10; History Bill for the Ct. Mr. Virginia's rate is reasonable given his experience "representing multiemployer benefit funds in ERISA litigation for over 25 years" and his status as a partner of the firm. Virginia Decl. ¶ 8; *see also N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (noting that the rate of $425 per hour for partners in 2009 was a reasonable rate commensurate with the costs of similar work in the district for LMRA cases); *Watkins v. Smith*, No. 12-cv-4635, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) ("In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases.").[3] The requested rate of $120 per hour for the work performed by legal assistants is also reasonable. *See, e.g.*, *Rosales v. Gerasimos Enters., Inc.*, No. 16-CV-2278, 2018 WL 286105, at *2 (S.D.N.Y. Jan. 18, 2018) (noting that hourly rates of between $100 and $150 have been

---

[3] The Court notes that while Mr. Virginia's rates are reasonable, that conclusion is a moot point as he did not bill any of the 14.1 hours at issue. *See* History Bill for the Ct.

found to be reasonable for paralegals); *S.J. v. N.Y.C. Dep't of Educ.*, No. 20-cv-01922, 2020 WL 6151112 (S.D.N.Y. Oct. 20, 2020) (recommending $125 as the hourly rate to be awarded to paralegals), *report and recommendation adopted as modified by* 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021).

However, the Court does not approve of the $275 per hour rate for Ms. Moosnick and will reduce her rate to $225 per hour. The latter rate is the more appropriate one for associates with Ms. Moosnick's experience, as a court in this district recently concluded regarding Ms. Moosnick herself. *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Genrus Corp.*, No. 22-cv-4886, 2022 WL 3536134, at *5 (S.D.N.Y. Aug. 18, 2022) (reducing Ms. Moosnick's rate from $275 to $225); *see also Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Triangle Enter. NYC, Inc.*, No. 20-cv-793, 2020 WL 2306484, at *6 (S.D.N.Y. May 8, 2020) (lowering the rate of an associate with similar experience from $275 to $225); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Metro. Exposition Servs., Inc.*, No. 19-cv-149, 2019 WL 2004279, at *4 (S.D.N.Y. May 7, 2019) (same); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. DV I, LLC*, No. 17-cv-7367, 2018 WL 461244, at *5 (S.D.N.Y. Jan. 18, 2018) (holding that $225 per hour is an appropriate rate for "similarly situated" associates); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. AMP&G Constr., LLC*, No. 17-cv-4729, 2018 WL 1883450, at *4 (S.D.N.Y. Mar. 29, 2018) (same).

Finally, Petitioners request the reimbursement of $92.23 in court costs resulting from serving Architectural Metal Concepts with the petition to confirm the arbitration award and court fees. Virginia Decl. ¶ 13; Proposed J. at 1. Courts in this district routinely permit the recovery of such costs. *New York City & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-cv-1115,

2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016). The Court will therefore order reimbursement of that amount.

Accordingly, Petitioners' request for attorneys' fees and costs is granted, but with the reduced rate of $225 per hour for Ms. Moosnick's work. Petitioners are therefore entitled to $2,658 in attorneys' fees and $92.23 in costs.

### IV.     CONCLUSION

For these reasons, the petition to confirm the arbitration award is GRANTED. The Clerk of Court is directed to enter judgment of $15,592.11, which consists of the arbitration award of $12,841.88, attorneys' fees of $2,658, and costs in the amount of $92.23. Post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 10 and to close this case.

SO ORDERED.

Dated:  October 22, 2022
        New York, New York

_____
GREGORY H. WOODS
United States District Judge